## Case No. 6,702.

### The HORACE E. BELL.

[3 Ware, 236.] [1]

District Court, D. Maine. Sept.. 1859.

SEAMEN—VOID CONTRACT—VOYAGE—SMUGGLING.

1. A contract for a voyage which has no terminus is void by law. A voyage must terminate at a certain time or a certain port.

2. Smuggling on the part of seamen is a grave offence, but it is not imperative on the part of the court to forfeit their whole wages, and the law may be satisfied with a fine.

[In admiralty. Libel for wages.]

Fessenden & Butler, for libellants.
Shepley & Dana, for respondent.

WARE, District Judge. The schooner Horace E. Bell was built at Pembroke, in this state in 1857, and owned, when built, one-fourth by Joshua E. Clarke and three-fourths by other parties. On the 10th of June of that year she sailed from Eastport to Philadelphia on a general freighting voyage, under the command of Joshua E. Clarke, and was taken by him on shares, he to receive a certain portion of her earnings after paying the expense of victualling and manning her, and to pay the other part to the owners. Frederick Clarke as mate and Henry E. Clarke as cook and steward, went in her. She performed several voyages from Philadelphia and Baltimore under this contract, Henry E. Clarke continuing in her until June 18, 1858, when he was discharged on account of ill health, and Frederick Clarke until Sept. 15, 1858. This suit is brought against the vessel for their wages. The libel was served upon her as soon as her return to Eastport and before any transfer. and, therefore, the assignees took equitably as well as legally only the rights of the assignors. The mate and cook, who have joined in this libel, are both brothers of the master and part owners, and, therefore, may be supposed to know the terms on which this vessel was taken: that by this condition of the contract it was the duty of the master to furnish the crew with provisions and pay them. I am aware of the decisions of the courts of this state and Massachusetts, that under such a contract the material men lose their claim against the general owners and can look to the master only. In the case of Skolfield v. Potter [Case No. 12,925], I had occasion to review those decisions, and my opinion there was, that this construction of the maritime law ought not to be extended to seamen unless they were plainly told at the time that for their

---

[1] [Reported by George F. Emery, Esq.]

wages they were to look to the master only. That was a libel in personam against the owner, and this is a libel in rem and much stronger than that case. The law is so well understood, and the men are so much in the habit of looking to the vessel as their best security, that I feel no difficulty in allowing their lien in the present case.

The defence in this action assumes a different basis. The first ground of defence is that the seamen are in delay, and that they ought to have brought their libel against the ship at the end of each voyage. But when did the voyage end? In the first shipping articles signed, the voyage is described as one "from Eastport to Hillsboro and thence to Philadelphia via Eastport, and thence back to a northern port of final discharge at Eastport." So that by the actual terms of the contract, the voyage did not end until her arrival back to Eastport, and the libels were sued out as soon as she returned. But if we take the voyage according to the understanding of the parties, as a general freighting voyage, when, in the understanding of the parties, did the voyage terminate? The enterprise was that of seeking employment, and when she had discharged her cargo at Philadelphia she might as well go to Baltimore, Norfolk, or any other southern port, as to that to which she did go. She had her choice of ports. If we recur to her original shipping articles, the voyage ended only on her return to Eastport. If we consider the voyage as a general trading and freighting voyage, as there was no limitation of time the contract was void for indefiniteness, for the vessel might never return to Eastport. The seamen might leave the vessel and demand their wages when they pleased. But there being no limitation in the articles, if it should be construed for reasonable time, then the voyage would not be ended and the wages demandable, according to the French law, until the voyage had come to a conclusion, that is, until her arrival in Eastport. Emerig. Ins. c. 13, § 3. In any view of the case I think the seamen have seasonably commenced their suit.

The second objection is that they forfeited their wages by smuggling at Baltimore, at the end of the voyage from Porto Rico. This, it is alleged, is an act of dishonesty, or as it was called in the argument, an act of barratry, by which all antecedent wages were forfeited. That there was smuggling is admitted, and I think that the evidence in the case sufficiently proves that the libellants were concerned in it. But the smuggling was not sufficient to forfeit the vessel, which, if it had been over $400 in value, it would have done. Laws U. S. (Stat. 1797, § 5). The master alone was arrested, and he paid a fine of fifty dollars. If this suit had been against him, this would have been an equitable as well as a legal defence. It is admitted, that on the part of seamen, this is a grave offence and ought not to be lightly

passed over. But if the vessel had been arrested, it would not have been imperative in the court to inflict the highest penalty. The case cited in the argument—Scott v. Russell [Case No. 12,546]—is an authority for this. The law might have been satisfied with an abatement from the wages instead of an entire forfeiture. In that suit the vessel was delayed in consequence of the seizure, but the court did not forfeit the whole wages and inflicted a fine of twenty-five dollars, only. In this case, as the vessel did not suffer, I think it is not for the master to take advantage of this defence.

The third point made in the case relates to the amount of the wages. It is contended in the answer that, if any are due, there ought to be an abatement at least. Ordinarily the rate of wages is fixed by the shipping articles, and the statutes render this conclusive. Law of the U. S. But the articles may be always impeached for fraud or mistake. But in this case there is difficulty in believing that there was either fraud or mistake. The only evidence beyond that of the declaration of the parties in the libel, is the testimony of the master. It was his duty to see that the rate of wages was correctly entered; and without entering on the question how far he is to be believed against them, and he appears to be a fair witness, I feel disposed to allow wages according to the written record. The whole of this enterprise from the beginning, appears to have been unfortunate without faults imputable to any one. But, as the seamen would have no benefit from its being prosperous, so they ought to suffer nothing from its being unprosperous. And in finding the wages at the price in the articles, I do not forget the attempt at smuggling. The decree will be for the sums found according to the rates stipulated in the articles for the periods of service, deducting advances.